UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| ANTHONY KAMINSKI, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:16-CV-514 JD |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

In 2000, Anthony Kaminski fell down a flight of stairs, causing a head injury that left him with impaired cognition and caused him to experience seizures. Years later, in 2013, he applied for social security benefits, arguing that he became disabled on the date of his accident. An administrative law judge disagreed and found that there were jobs Mr. Kaminski still had the capability to perform. Mr. Kaminski submitted additional evidence to the Appeals Council with his request for review, but the Appeals Council denied review, making the Commissioner's decision final. Mr. Kaminski then filed this action seeking of review of that decision. Because the ALJ's decision was supported by substantial evidence and the Appeals Council did not err in denying review, the Court affirms the Commissioner's decision.

### I. FACTUAL BACKGROUND

On September 19, 2000, Mr. Kaminski fell down a flight of stairs. He suffered a traumatic brain injury and a broken jaw, and he experienced a seizure. He was discharged from the hospital after undergoing surgery on his jaw, but he continued to have some cognitive deficits and mental status changes. He began taking medication to control his seizure disorder, and

between his hospitalization and the date of the ALJ's decision, he experienced only four seizures. He also attended periodical appointments with his neurologist over the ensuing years.

On March 7, 2013, Mr. Kaminski applied for social security disability insurance benefits and supplemental security income, claiming that he became disabled on the date of his accident. The following month, he underwent a consultative medical examination. (R. 363). The examiner found that Mr. Kaminski's strength was "4/5 [in] all major muscle groups," that his "[f]ine finger manipulative ability is normal," and that he has "ataxic gait" but "displays no signs of poor balance" and "is able to stand from a sitting position without difficulty, stoop and/or squat and is able to walk heel to toe." (R. 364–65). The examiner further noted that Mr. Kaminski's memory appeared preserved, that he reported no fatigue, dizziness, or difficulty with concentration, and that he showed appropriate judgment. *Id.* Mr. Kaminski also underwent a consultative psychological examination. The examiner noted that Mr. Kaminski was oriented and cooperative, and that his mood was affable. (R. 369). The examiner also found that Mr. Kaminski "had concrete reasoning" but that his memory was poor. (R. 369–70).

Agency reviewing physicians then reviewed Mr. Kaminski's medical records and the consultative examinations and offered opinions as to his functional capacity. They found that he was capable of performing medium work, with a number of postural and environmental limitations, including that Mr. Kaminski should never climb ladders, ropes, or scaffolds; only occasionally climb ramps or stairs; and never be exposed to machinery or heights. (R. 81–82). They further found that he had moderate limitations in his ability to carry out detailed instructions, maintain concentration for extended periods, and interact with coworkers or the public, among a variety of other limitations. (R. 83–84; *see also* R. 101–04).

Mr. Kaminski's treating physician, however, offered much more restrictive opinions as to Mr. Kaminski's ability to work. He opined that Mr. Kaminski could never lift more than five pounds, that he could only rarely reach in any direction or handle objects, and that it would be unsafe for him to lift, pull, or hold objects due to his seizure disorder. (R. 379–80). He also opined that Mr. Kaminski can stand or walk less than two hours in a workday, that he is incapable of even "low stress" work, and that he has no ability to maintain attention, make simple work-related decisions, or accept instructions. (R. 434–35, 439).

After holding a hearing at which Mr. Kaminski, his sister, and a vocational expert testified, the ALJ considered this evidence and decided to give "substantial evidentiary weight" to the opinions of the reviewing physicians, and "little evidentiary weight" to the opinions of Mr. Kaminski's treating physician. (R. 21–22). He explained that the treating physician's opinions "are simply not supported by the record as a whole, including [his] own treatment notes," and the ALJ cited multiple examples of evidence in the record suggesting that Mr. Kaminski was not as limited as the treating physician opined. (R. 2). As to the reviewing physicians, the ALJ found that their opinions were consistent with the record as a whole, and he adopted a Residual Functional Capacity for Mr. Kaminski that largely tracked those physicians' opinions. Based on the testimony of the vocational expert, the ALJ concluded that Mr. Kaminski would be unable to perform his previous jobs, but that there were other jobs that he would be able to perform, including "general helper," "laundry laborer," and "dryer attendant." (R. 23–23). Accordingly, the ALJ found that Mr. Kaminski was not disabled and was thus not entitled to benefits.

Mr. Kaminski asked the Appeals Council to review his claim, and he submitted additional evidence for the Appeals Council to consider, including letters from his treating physician and a former employer. However, the Appeals Council denied his request for review,

stating that the new evidence did "not provide a basis for changing the Administrative Law Judge's decision." (R. 2). Therefore, the ALJ's decision denying Mr. Kaminski's claim became the final decision of the Commissioner. Mr. Kaminski then filed this action seeking review of that decision.

## II. STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d

4

881, 887 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III.  DISCUSSION

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, then in between steps three and four, the ALJ must then assess the claimant's Residual

Functional Capacity ("RFC"), which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545. The ALJ then uses the RFC to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Mr. Kaminski raises three arguments in support of reversal. First, he argues that the ALJ erred by declining to give controlling weight to the opinions of his treating physician, Dr. Cristea. Second, he argues that the ALJ erred by failing to seek an updated medical opinion to interpret records submitted after the agency reviewing physicians offered their opinions. Third, he argues that the Appeals Council erred in finding that the additional evidence he submitted after the ALJ's decision was not new and material. The Court considers each argument in turn, but finds that none of the arguments present grounds for reversal.

**A.      Treating Physician**

Mr. Kaminski first argues that the ALJ erred by declining to give controlling weight to the opinions of his treating physician. "[A] treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if supported by the medical findings and consistent with substantial evidence in the record." *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007).[1] "However, while the treating physician's opinion is important, it is not the

---

[1] The regulations have since been revised as to the analysis of a treating physician's opinion, 20 C.F.R. § 404.1520c, but those revisions took effect after the claim at issue here, and would not affect the soundness of the ALJ's decision either.

final word on a claimant's disability." *Id.* (internal quotations omitted). Thus, an ALJ may discount a treating physician's opinion of it is internally consistent, or if it is inconsistent with other evidence in the record, so long as the ALJ offers "good reasons." *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010); *Schmidt*, 496 F.3d at 842. Courts review such a decision deferentially: "the ALJ's decision must stand as long as she has 'minimally articulated' her reasons for rejecting the treating physician's opinion." *Henke v. Astrue*, 498 F. App'x 636, 639 (7th Cir. 2012) (quoting *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008)).

Here, Mr. Kaminski's treating physician, Dr. Cristea, offered a highly restrictive set of limitations on Mr. Kaminski's ability to function. He opined, for example, that Mr. Kaminski is never able to lift or carry more than five pounds; that he can handle objects or reach only "rarely"; that he can never lift, pull, or hold objects; that he can stand or walk less than two hours in a day; that he is incapable of even low-stress work; and that he has little to no ability to perform simple tasks or respond appropriately to directions. (R. 378–79, 434–45, 439). His opinions also repeatedly state that Mr. Kaminski is "totally disabled." (R. 378, 380, 434, 436, 437). The ALJ decided to give these opinions "little evidentiary weight," explaining as follows:

> These opinions are simply not supported by the record as a whole, including Dr. Cristea's own treatment notes. The claimant's seizure disorder appears to be well controlled and/or stable when he is on his medication. He has consistently demonstrated normal balance and coordination (Exhibits 7F; 12F; 16F; 18F). The claimant has also been cooperative with a normal mood and affect (Exhibits 7F; 8F; 12F; 15F; 16F; 21F). Further, he has frequently denied experiencing any fatigue, dizziness, or vertigo (Exhibits 7F; 12F; 16F). The claimant has also often denied problems with concentration, memory loss, mood changes, or personality changes (Exhibits 12F; 16F).

(R. 22). This explanation more than "minimally articulates" the ALJ's reasoning, and is adequately supported in the record, so the Court cannot upset that finding, even if Mr. Kaminski can present arguments as to how the evidence could have been weighed differently.

7

In arguing to the contrary, Mr. Kaminski primarily argues that the ALJ should not have relied on contradictions between his treating physician's opinions and his own subjective reports of his condition, as he has a poor memory and thus could not have been expected to reliably report his symptoms. First, however, the ALJ did acknowledge evidence that Mr. Kaminski's memory was poor, but he also cited other evidence to the contrary. (R. 20 ("Since his alleged onset date, the claimant has sometimes demonstrated poor memory (Exhibit 8F). However, his memory has often been found to be preserved and/or unimpaired (Exhibits 7F; 18F).")). The consultative examination noted that Mr. Kaminski's "memory appears to be preserved," (R. 363), and records from another doctor consistently noted that his "Memory was unimpaired." (R. 529, 532, 536, 539, 543). Given that evidence, the ALJ was not required to have accepted that Mr. Kaminski's memory was poor and to have ignored the contradictions with Dr. Cristea's opinions on that ground.

Second, Mr. Kaminski's own statements were not the only evidence that the ALJ cited as contradictory to Dr. Cristea's opinions. Rather, the ALJ also cited a number of objective findings and observations in the medical records, including Dr. Cristea's own records, that contradicted those opinions. For example, in noting that Mr. Kaminski has "consistently demonstrated normal balance and coordination," (R. 22), the ALJ cited in part to the consultative examination, which found that he "displays no signs of poor balance." (R. 364). That report further found that while Mr. Kaminski has "ataxic gait," he "is able to stand from a sitting position without difficulty, stoop and/or squat and is able to walk heel to toe," and "is able to get on and off the examination table without assistance." (R. 365). The ALJ further cited to Dr. Cristea's own treatment records, which often list "Dizziness, Falling, . . . Trouble walking, [and] Unsteadiness" as among the

symptoms that are "Not Present." (R. 419–20, 422; 473, 477, 481).[2] Records from a doctor Mr. Kaminski saw to treat his blood pressure likewise state that Mr. Kaminski had normal balance, gait, and stance, and no coordination abnormalities. (R. 528–29, 533, 536, 540). As the ALJ also noted, many of these same records describe Mr. Kaminski as cooperative, with a normal mood and affect. (*E.g.*, R. 363, 369, 420, 423, 529, 533, 536, 540). Therefore, given that the ALJ relied substantially on these objective findings and observations, his decision to discount Dr. Cristea's contradictory opinions would have been justified even without also considering that those opinions contradicted Mr. Kaminski's subjective reports as well.

Mr. Kaminski also argues that the limitations in Dr. Cristea's opinions were not merely meant to reflect his capabilities, but also to exclude activities that would trigger his seizures. Dr. Cristea actually stated, though, that Mr. Kaminski's seizures could be precipitated by "inadequate sleep, sleep deprivation, extreme fatigue, [or] dehydration." (R. 434). Those potential triggers would not explain Dr. Cristea's opinions that Mr. Kaminski should never lift more than five pounds, should rarely handle objects or reach in any direction, and should never lift or pull objects, for example. (R. 379–80). In addition, the ALJ noted that Mr. Kaminski's seizure disorder appeared to be well controlled when he is on his medication, and that he had

---

[2] Mr. Kaminski also notes that these records indicate that he once "tripped on uneven surface," (*e.g.*, R. 420), but such an event does not alter the ALJ's observation that doctors consistently found Mr. Kaminski to demonstrate normal balance and coordination. He also notes that he reported that he is "sometimes unstable" and "sometimes he is depressed." Again, however, that does not address the ALJ's finding that the limitations in Dr. Cristea's opinions are far more severe than what is supported in the record as a whole. And the ALJ did incorporate limitations into the RFC to address these concerns; he simply chose not to adopt Dr. Cristea's more extreme limitations on these topics. Nor are the records ambiguous as to how often Mr. Kaminski suffered seizures, despite often listing "seizures/convulsions" among his symptoms; the records themselves clarify when the seizures occurred, and even Mr. Kaminski concedes that he only suffered four seizures over this period. [DE 16-1 p. 2].

9

only experienced four seizures in the last fourteen years.[3] (R. 20, 22). Thus, even to the extent Dr. Cristea meant to exclude triggers through the limitations he expressed, the ALJ reasonably found that such extreme limitations are not supported by the record as a whole. For those reasons, the Court finds that the ALJ did not err in discounting the opinions of Mr. Kaminski's treating physician.

B.      **Evidence Post-Dating the Reviewing Physicians' Opinions**

Mr. Kaminski next argues that the ALJ erred by failing to seek an updated medical opinion to address evidence that post-dated the opinions of the state reviewing physicians, on which the ALJ relied. After the reviewing physicians offered their opinions in April and May, 2013, Mr. Kaminski submitted more recent records from his neurologist and an MRI he underwent in June 2013. The ALJ acknowledged these records but concluded that they did not warrant a change in the reviewing physicians' findings because they were "consistent with the evidence reviewed by" the reviewing physicians and there "was no indication that the claimant's condition substantially worsened." (R. 21). Mr. Kaminski argues that without a medical opinion addressing that evidence—in particular, a June 2013 MRI showing that he had damage to his left temporal lobe—the ALJ had to "play doctor" in interpreting its significance and his decision is therefore not supported by substantial evidence.

First, however, this argument overlooks that the ALJ *did* have a medical opinion interpreting these records: although the reviewing physicians did not review the MRI, Mr. Kaminski's own doctor did. After the MRI was performed in June 2013, Dr. Cristea reviewed it, stating "last MRI stable," and noting that it was consistent with the previous trauma. (R. 420).

---

[3] In addition, the ALJ did adopt a number of limitations to exclude situations in which a seizure would present a safety concern, as he found that Mr. Kaminski could "never" climb ladders or scaffolds, operate a motor vehicle, or be exposed to unprotected heights or moving machinery. (R. 19).

Thus, the ALJ did have a medical opinion about that MRI, and was not playing doctor in finding that this evidence was consistent with the evidence before the reviewing physicians and that it did not show a worsening of Mr. Kaminski's condition. (R. 21). And for the same reasons, this MRI did not change the evidentiary landscape so much that the ALJ could not have relied on medical opinions from before the MRI. *See Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (finding that the ALJ erred in not seeking an updated medical opinion after the claimant submitted an evaluation that "contained significant, new, and potentially decisive finding").

Mr. Kaminski also argues that this MRI was consequential because it provided objective evidence that he suffered a brain injury, and that if the reviewing physicians had been aware that he suffered an injury to his brain, not just that he previously suffered a head trauma, they might have been more willing to accept his claims of disabling limitations. This argument might have had some weight if there was no evidence before the reviewing physicians that Mr. Kaminski had suffered a brain injury. However, that was not the case. Mr. Kaminski underwent a CT scan several years prior that likewise demonstrated an injury to his "left temporal lobe" as a result of his initial injury. (R. 345). Thus, the reviewing physicians already had objective evidence showing that Mr. Kaminski had suffered a brain injury, so as the ALJ noted, the subsequent MRI was consistent with the evidence already before the reviewing physicians. (R. 21). Accordingly, the Court cannot find that the ALJ erred by failing to seek an updated medical opinion based on this evidence or by crediting the reviewing physicians' opinions despite this subsequent evidence.

C.     **Review by the Appeals Council**

Finally, Mr. Kaminski argues that the Appeals Council erred in declining to consider the additional evidence that he submitted after the ALJ issued his decision. The Appeals Council is required to consider any "new and material evidence" that "relates to the period on or before the

date of the [ALJ] hearing decision" in determining whether a case qualifies for review. 20 C.F.R. § 404.970(b)[4]; *Stepp v. Colvin*, 795 F.3d 711, 721 (7th Cir. 2015); *Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012). "If the newly submitted evidence satisfies these conditions, the Appeals Council shall incorporate that evidence into the administrative record and shall then evaluate that record, including the new and material evidence." *Stepp*, 795 F.3d at 721 (internal quotation omitted). It will then grant review if it determines based on the supplemented record that the ALJ's decision is "contrary to the weight of the evidence." *Id.* When the Appeals Council declines review because it determines that the newly submitted evidence was not "new and material," courts review that conclusion *de novo* for legal error. *Id.* In the absence of such an error, the Council's decision is discretionary and unreviewable. *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997).

Mr. Kaminski submitted additional evidence to the Appeals Council, and both parties agree that the Appeals Council found that the evidence did not qualify as "new and material," so the Court reviews that conclusion de novo.[5] Evidence is "new" if it was "'not in existence or available to the claimant at the time of the administrative hearing.'" *Stepp*, 795 F.3d 721 n.2 (quoting *Perkins*, 107 F.3d at 1296). Evidence is "material" if there is a "'reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered' in the first instance." *Id.* (quoting *Perkins*, 107 F.3d at 1296). Mr. Kaminski

---

[4] This regulation was amended effective January 17, 2017, 81 Fed. Reg. 90987-01 (Dec. 16, 2016) (adding a requirement that the claimant show good cause for not previously submitting the new evidence), after the Appeals Council issued its order denying review on June 11, 2016, so the Court refers to the regulation as it existed at the time of the Appeals Council's order.

[5] The language that the Appeals Council used in its order denying Mr. Kaminski's request for review was ambiguous, but it is identical to the language in *Stepp*, which the Seventh Circuit interpreted as meaning that the Appeals Council found that the evidence did not qualify as new and material. 795 F.3d at 721–25. Both parties here proceed on the same understanding, and in light of *Stepp*, the Court interprets the order in that manner as well.

12

submitted three pieces of evidence to the Appeals Council: (1) treatment records from shortly after his accident in 2000; (2) a letter from a former employer dated February 26, 2015; and (3) a letter from Dr. Cristea and his nurse practitioner dated March 9, 2015. Mr. Kaminski does not claim that the treatment records from 2000 qualify as new, so only the latter two pieces of evidence are at issue. As to those letters, the Commissioner does not dispute that they are new, as they post-date the ALJ's January 14, 2015 decision, so the only question is whether they are material, in that there is a reasonable probability that the Commissioner would have reached a different conclusion had those letters been considered in the first instance.

The Court cannot find that these letters would have had such an effect. As Mr. Kaminski concedes, the letter from Dr. Cristea mostly just reiterates his previous opinions that the ALJ had considered and discounted. That aspect of the letter is thus not material. Mr. Kaminski focuses instead on a line in the letter where Dr. Cristea stated that Mr. Kaminski "does not even comprehend his own deficits in order to acknowledge that he is a danger to himself and others." (R. 762). Mr. Kaminski argues that this statement supports his previous argument that his reports of his own symptoms are unreliable, so the ALJ should not have discounted Dr. Cristea's opinion due to its inconsistency with those self-reported symptoms (or lack thereof). However, stating that Mr. Kaminski does not "comprehend his own deficits" does not suggest that he is not even able to report to his doctors the symptoms that he experiences. More importantly, as discussed above, the ALJ did not rely only on the inconsistencies with Mr. Kaminski's self-reported symptoms in deciding to discount Dr. Cristea's opinion. Rather, he cited to objective findings and to observations by doctors, including Dr. Cristea, showing that Mr. Kaminski was not nearly as limited as Dr. Cristea opined. This new letter from Dr. Cristea would have had no effect on

that evidence, so there is no reason to believe that the ALJ would have reached a different decision if he had considered this letter.

The other letter Mr. Kaminski submitted to the Appeals Council was from Jack Davis, who employed him as a carpenter for a year and a half prior to his injury. Mr. Davis stated that Mr. Kaminski worked for him again for two days in 2001, after the injury, but that he had to let Mr. Kaminski go because Mr. Kaminski was unable to focus, accomplished little work, and responded poorly to direction. (R. 310). Mr. Davis further stated that he tried to give Mr. Kaminski work in 2010, but that nothing had changed. However, this letter is not inconsistent with the ALJ's findings. The ALJ concluded at step four that Mr. Kaminksi would be unable to perform his previous work, and this letter confirms that finding. In addition, in formulating Mr. Kaminski's RFC, the ALJ found that Mr. Kaminski was "limited to performing simple, routine, and repetitive tasks but not at a production rate pace (e.g. assembly line work)" and that he can only "occasionally respond appropriately to coworkers and the public." (R. 19). Mr. Kaminksi does not argue that Mr. Davis' letter would support any further limitations. Instead, he argues that this letter shows that Mr. Kaminski has little insight into his own limitations,[6] which he again argues undercuts the ALJ's reasons for discounting Dr. Cristea's opinions. For the same reasons just discussed, the Court disagrees, as this evidence would not meaningfully respond to the ALJ's reasoning.

Therefore, the Court finds that there is no reasonable probability that the Commissioner would have reached a different conclusion had this new evidence been considered in the first

---

[6] The Court does not believe the letter itself supports this proposition, either, and Mr. Kaminski never explains why he interprets the letter in this manner.

14

instance. Accordingly, it is not material, and the Appeals Council did not commit legal error in denying review on that basis.

## IV.  CONCLUSION

For those reasons, the Court finds that the Commissioner's decision is supported by substantial evidence and that Mr. Kaminski has not presented any grounds for reversal. Accordingly, the Court AFFIRMS the Commissioner's decision. The Clerk is DIRECTED to enter judgment accordingly.

SO ORDERED.

ENTERED:  September 11, 2017

        /s/ JON E. DEGUILIO
Judge
United States District Court